UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAMY SHAKER, individually, and on
behalf of a class of similarly situated
individuals,

        Plaintiffs,

v.

CHAMPION PETFOODS USA INC. and
CHAMPION PETFOODS LP,

        Defendants.

Case No. 18-13603

Honorable Laurie J. Michelson

---

## ORDER ON
## PLAINTIFFS' MOTION TO COMPEL LABEL CHANGE MATERIALS [41]

---

       This matter is before the Court on Plaintiffs' motion to compel discovery. (ECF No. 41.) The motion is fully briefed (ECF No. 42, 43) and the Court heard oral argument on November 24, 2020. For the reasons stated more fully on the record in the Court's oral ruling, the motion is GRANTED IN PART AND DENIED IN PART. For ease of reference, the Court's ruling is attached to this order.

<u>Oral Ruling</u>

In this class action, Plaintiffs allege that Champion knowingly deceived consumers through its misleading packaging claims on their Acana and Orijen dog food diets. One of these alleged misleading packaging claims is "Fresh Regional Ingredients." (ECF No. 32.). Plaintiffs say this claim promised and represented to consumers that Champion used a material amount of fresh ingredients that they sourced locally or regionally. (ECF No. 25, PageID.228.) But that at all times during the Class Period, Champion knew or should have known that this packaging claim was misleading because Champion sourced many ingredients from non-local and non-regional ingredient suppliers, including those outside of the Kentucky area, and from many international ingredient suppliers. (ECF No. 25, PageID.249-251.) Plaintiffs further allege that they would not have purchased the dog food, or paid the premium prices, if they had not been deceived by Champion's misleading packaging claims and omissions. (ECF No. 25, PageID.222.)

Some time in 2019 and 2020, after this litigation began, Champion's packaging for certain diets was changed and now includes labels that disclose that its dog food is either "Proudly Made in Our Kentucky Kitchens from the World's Finest Ingredients" or "Made in Our Kentucky Kitchen From US and Imported Ingredients" (collectively the "Label Changes"). (But as counsel for Defendants pointed out today, not all packaging was so changed.)

Plaintiffs seek limited discovery on these label changes. They have requested (1) draft and final labels that include the Label Changes; (2) external communications regarding the Label Changes; and (3) a four-hour deposition of a designated corporate representative on the Label Changes. Defendant opposes the request. The Court conducted a status conference with the parties but was unable to resolve the dispute. So the matter is before the Court on Plaintiffs' fully briefed motion to compel. (ECF No. 41, 42, 43.)

2

Parties may obtain discovery on any non-privileged matter that is relevant to any party's claim or defense, and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

The parties dispute whether the requested discovery is relevant and proportional.

Plaintiffs claim these new disclaimers are relevant to  assessing (1) whether a reasonable consumer would be misled by the at-issue "Regional Ingredients" packaging label; (2) whether the disclosure of international suppliers was a material omission from its "Regional Ingredients" packaging label; and (3) for impeachment purposes. (ECF No. 43, PageID.654, 659.)

Plaintiffs further argue that while they may not need to prove Champion knew its "Regional Ingredients" packaging claim was misleading to prove a violation of the Michigan Consumer Protection Act, evidence showing Champion's knowledge that its packaging was inaccurate and needed revisions is pertinent to proving that Plaintiffs were reasonably misled by Champion's "Regional Ingredients" packaging claim.

Champion has a different view. Champion argues, "Whether for class certification or as to the merits, the proper focus here is the advertising claims made on diets Plaintiffs actually purchased before they claim they had been misled, not on 'changes' to packaging that occurred after Plaintiffs allegedly discovered the 'truth' about the representations. Put another way, only statements made on bags up to April 2018 (or October 2018) could possibly meet the elements of any of Plaintiffs' claims or Champion's defenses." (ECF No. 42, PageID.567.)

Champion has the better of the argument. The primary issues here are whether Champions' packaging prior to this litigation was misleading, whether it deceived plaintiffs, and whether

3

Plaintiffs were injured as a result. As Champion points out, packaging changes that came into being months and years after this lawsuit was initiated cannot have affected Plaintiffs' purchase decisions or the prices they paid. And whether a reasonable consumer would be misled by the "Regional Ingredients" claim or whether the failure to disclosure international suppliers was a material omission does not depend on the content of the post-litigation packaging.

There could also be any number of reasons that Champion made changes after being sued—customer goodwill after learning that consumers felt deceived, to make more clear what Champion already believed to be clear, or, yes, as Plaintiffs argue, as some indication that Champion knew the claim of "Regional Ingredients" was misleading without further disclosure.

But even if there is some probative value to the requested discovery, it must also be proportional to the needs of the case.

In evaluating the proportionality of a request, the Court should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *Rockwell Med., Inc., v. Richmond Bros., Inc*., 2017 WL 1361129, at *1 (E.D. Mich. Apr. 14, 2017).

This is a potentially large class action of dog owners who pay a premium price for dog food. It is important to them to be able to make educated decisions about what they feed to their pets. There is similar litigation occurring in numerous jurisdictions and both sides appear to have significant resources. But the information about the new labels being sought does not appear very likely to resolve the key issues or provide any benefits that outweigh the expense of production.

To the contrary, as the Court discussed with the parties during a prior status conference to try to resolve this dispute, much of the requested discovery is likely to be inadmissible under Federal Rule of Evidence 407. That rule provides, in part, that "evidence of the subsequent [remedial] measures is not admissible to prove . . . negligence, culpable conduct, a defect in a product or its design, or a need for a warning or instruction." It is true that Rule 407 governs admissibility of evidence, not discoverability of potential evidence. *See Laws v. Stevens Transport, Inc.*, 2013 WL 941435, at *3 (E.D. Ohio Mar. 8, 2013) ("Because Fed.R.Evid. 407 governs the admissibility of evidence and does not control pretrial discovery, the objections to discovery based on this evidentiary rule will be overruled.") But this still implicates proportionality—especially in light of the cases cited by Champion in which evidence of revisions to product labels or marketing material were ultimately excluded under Rule 407. (ECF No. 42, PageID.571-572) (citing *Myers v. Williams Manufacturing, Inc.*, No. CV 02-157 JP/ACT, 2003 WL 27384802, *1 (D.N.M. Nov. 14, 2003) (excluding evidence of changes to tow rope warning label after lawsuit filed); *Germain v. AIG Claims Services, Inc.*, No. CV 07-133-M-JCL, 2009 WL 10677331, *2 (D. Mont. May 1, 2009) (excluding evidence of revisions to marketing materials as a result of lawsuit); *Hogan v. Novartis Pharmaceuticals Corp.*, No. O6 Civ. 0260, 2011 WL 1336566 (E.D.N.Y. Apr. 6, 2011) (excluding evidence defendant removed "well-documented risk factors" from label).

In its response brief, Champion sets forth the extensive discovery that has been undertaken and shared in the related cases. They estimate that the collection and production of the documents responsive to Plaintiffs' requests will cost in excess of $50,000 and associated attorneys' fees will exceed $100,000. (ECF No. 42, PageID.571.) Plaintiffs do not counter this position in the briefing. They simply assert that the relevance is proportional to the needs of the case. (ECF No. 43, PageID.659.) Today, counsel expressed skepticism that the requested discovery should not cost as

much as set forth in the briefing. Defense counsel explained the work that would be required to gather the documents and prepare a witness. And the Court agrees that when Rule 26's proportionality considerations are coupled with Rule 407's exclusionary rule, Champion should not be forced to incur these expenses to collect, review and produce all of the documents being sought and to prepare and defend another corporate representative for a 4-hour 30(b)(6) deposition on a topic that may never be admitted.

But that does not mean everything is off limits. Plaintiffs also argue that the discovery sought is relevant and necessary for potential impeachment of Champion's Chief Marketing Officer, Julie Washington, that potentially pertains to conduct that occurred prior to the litigation. While Washington is not individually disclosed on the parties' witness lists, Plaintiffs' Rule 26 initial disclosures included anyone who was deposed and she was. At her deposition, Plaintiffs' counsel asked her whether Champion was considering any label changes to the term regional or adding a disclosure as to international suppliers in December 2018 and she said no. (ECF No. 41-5.). But discovery in the case also included an internal Champion document from April 2018 in which Champion was considering the label changes. The document states that "We have recently considered changing this definition in our BAFRINO names as we have outgrown our ability to source from our local region." BAFRINO is the abbreviation for Biologically Appropriate, Fresh, Regional and Never Outsourced.

This document was written by Champion's head of Research and Innovation, Jeff Johnston, and it is unclear if Washington saw it. But that can be clarified by further questioning. And impeachment is an exception to Rule 407's admissibility bar. Also, further narrowing Plaintiffs' request to communications about label changes that involve then CMO Washington should not

pose an undue burden or violate the proportionality requirement—especially as she was only with the company a short period of time.

So the Court will GRANT IN PART AND DENY IN PART without prejudice Plaintiffs' motion. (ECF No. 41.) To the extent there are any external communications involving whether Champion was considering any label changes to the term regional or adding a disclosure as to international suppliers as of December 2018 that involved CMO Washington, Champion shall produce them within 21 days from the entry of the order resolving this motion. For now, the remainder of the requests are denied.

If somehow warranted, the Court may consider revisiting the issue at the final pretrial conference. If Plaintiffs can make a stronger showing of relevancy and survive any motions in limine to exclude evidence of label changes, the Court will consider allowing the production of the label changes, additional communications, and a pre-trial deposition of a 30(b)(6) witness. It does not appear that that information is needed now for the remainder of the discovery or class certification or summary judgment motions.

SO ORDERED.

Dated: November 24, 2020

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE