UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAMY SHAKER, TRACY
KNIERIM, LISA BARTA, and
CHERYL WELLNITZ, individually,
and on behalf of a class of similarly
situated individuals,

    Plaintiffs,

v.

CHAMPION PETFOODS USA INC.
and CHAMPION PETFOODS LP,

    Defendants.

Case No. 18-13603
Honorable Laurie J. Michelson

**OPINION AND ORDER GRANTING DEFENDANTS'
REVISED MOTION FOR SUMMARY JUDGMENT [110] AND
DENYING ALL OTHER PENDING MOTIONS AS MOOT [104–109]**

A group of Michigan dog owners believe that they overpaid for certain varieties of premium dog food that was labeled, manufactured, and distributed by Defendants Champion Petfoods USA Inc. and Champion Petfoods LP (collectively "Champion"). (*See generally* ECF No. 25.) Specifically, they argue that Champion labeled the dog food they bought for their pets as being "biologically appropriate," "natural," "trusted everywhere," and made with "fresh," "regional" ingredients while knowing that the food contained non-fresh, non-regional ingredients, heavy metals, BPA (a chemical for making plastics), and perhaps even low levels of pentobarbital (a barbiturate used to euthanize animals that may have infiltrated Champion's meat supply for a brief period). (*See id.* at PageID.233–257.)

So these Plaintiffs sued Champion on behalf of themselves and other consumers. (*See generally* ECF No. 25.) And Plaintiffs were not alone. Suits based on similar alleged misrepresentations and omissions by Champion were filed in at least 16 jurisdictions.[1] *See Song v. Champion Petfoods USA, Inc.*, No. 18-CV-3205, 2020 WL 7624861, at *1 n.1 (D. Minn. Dec. 22, 2020) (collecting cases).

After several years of discovery in this and related cases, Champion has now filed a revised motion for summary judgment. (*See* ECF No. 110.) Because the Court finds that the distribution of dog food is exempt from Michigan's Consumer Protection Act and because Plaintiffs' other claims are barred by state law, the Court will GRANT the motion, DENY all other pending motions as moot, and DISMISS the case.

## I. Background

Plaintiffs are Michigan-based "pet parents" willing to pay "ultra premium prices" for their dogs' food. (ECF No. 116, PageID.21181.) Accordingly, they purchased various types of premium Champion dog food from their local pet stores.

---

[1] It appears that all but two cases have since been dismissed from federal court, not including this case. *See Rydman v. Champion Petfoods USA, Inc.*, No.18-CV-01578, ECF No. 77 at p.5 (W.D. Wash. Jan. 14, 2022) (joint status report summarizing seven remaining cases as of Jan. 2022); *Renfro v. Champion Petfoods USA, Inc*, 25 F.4th 1293 (10th Cir. 2022) (affirming motion to dismiss in Feb. 2022); *Song v. Champion Petfoods USA, Inc.*, 27 F.4th 1339 (8th Cir. 2022) (affirming motion to dismiss in Mar. 2022); *Colangelo v. Champion Petfoods USA, Inc.*, No. 18-01228, 2022 WL 991518 (N.D.N.Y. Mar. 31, 2022) (granting summary judgment), *appeal docketed*, No. 22-962 (2d Cir. May 2, 2022); *Blackburn v. Champion Petfoods USA, Inc.*, No. 1:18-CV-0038, ECF No. 51 at p.18 (S.D. Iowa Aug. 12, 2021) (remanding to state court for lack of standing). *But see Zarinebaf v. Champion Petfoods USA Inc.*, No. 18 C 6951, 2022 WL 980832, at *11 (N.D. Ill. Mar. 31, 2022) (denying summary judgment in part); *Slawsby v. Champion Petfoods USA, Inc.*, No. 1:18-CV-10701, ECF No. 31 (D. Mass. July 24, 2018) (motion to dismiss pending).

(ECF No. 25, PageID.220–221.) But, say Plaintiffs, they and other pet parents were misled into overpaying for Champion's premium food based on misrepresentations and omissions on the labels. (*Id.*) They note that Champion marketed its food as "'Biologically Appropriate' dog food made with 'regional,' 'fresh,' and 'natural' ingredients[, when in] reality, the dog food contains and/or is at risk of containing heavy metals, Bisphenol A ("BPA"), pentobarbital, non-fresh ingredients, and non-regional ingredients." (*Id.*)

So Plaintiffs sued, arguing that Champion's "packaging statements misled consumers as to the content and quality of its dog food." (*Id.*) Specifically, Plaintiffs assert claims for: (1) breach of the Michigan Consumer Protection Act; (2) breach of express and implied warranties; and (3) fraudulent misrepresentation and concealment. (ECF No. 25, PageID.278–292.)

For the purposes of this opinion, a detailed factual recounting of each claim is unnecessary. But to illustrate just one example, Plaintiffs argue that Champion marketed certain varieties of its dog food as "biologically appropriate." And Champion knew that "biologically appropriate" was a "key differentiator" to get "pet lovers" to pay premium prices. (ECF No. 116, PageID.21183.) According to Plaintiffs, pet lovers (and other reasonable consumers) would expect "biologically appropriate" dog food to "not contain heavy metals, BPA, pentobarbital, and only contain fresh ingredients, unless specified otherwise on the packaging." (*Id.* at PageID.21186.) But Champion did not adequately test for heavy metals, BPA, pentobarbital, or other potential "toxins," and did not disclose the risk of such toxins to Plaintiffs. (*Id.* at PageID.21181,

3

21189–21193.) Therefore, the food was not actually biologically appropriate, and plaintiffs overpaid for the dog food when they relied on that statement. (*Id.* at PageID.21185.) (Importantly, nowhere do Plaintiffs allege that their dogs were harmed by the food or that the food was unfit for canine consumption. (*See generally* ECF Nos. 25, 116; *see also* ECF No. 70, PageID.8749 (Plaintiffs "agree[d] with [Champion] . . . that safety is not at issue in the present matter.").))

Now before the Court is Champion's revised motion for summary judgment (ECF No. 110), Champion's revised motions to exclude several of Plaintiffs' experts (ECF Nos. 106–109), and Plaintiffs' revised motion for class certification (ECF Nos. 104–105). Given the clear briefing and record, the Court considers the motions without further argument. *See* E.D. Mich. LR 7.1(f).

## II. Legal Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "The party opposing the motion must show that 'there is a genuine issue for trial' by pointing to evidence on which 'a reasonable jury could return a verdict' for that party." *Smith v. City of Toledo*, 13 F.4th 508, 514 (6th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Or, stated less formally, Champion is entitled to summary judgment only if no reasonable jury could find in favor of Plaintiffs. *See Anderson*, 477 U.S. at 251–52.

4

### III. Analysis

As explained, the following claims are at issue: (1) breach of the Michigan Consumer Protection Act; (2) breach of express and implied warranties; (3) fraudulent misrepresentation and concealment. (*See* ECF No. 25; ECF No. 101, PageID.12870.) There are legal bars to each of Plaintiffs' claims.

### A. The MCPA

Plaintiffs allege that Champion's dog food labels violated the Michigan Consumer Protection Act (MCPA) in various ways. (*See* ECF No. 25, PageID.278–280.) But according to Champion, the MCPA does not apply to the distribution of dog food. (ECF No. 110, PageID.16871.)

Before proceeding to the merits of this argument, the Court notes that the availability of this affirmative defense has been subject to some debate. In response to Champion's prior motion for summary judgment, Plaintiffs argued that Champion forfeited this affirmative defense by failing to raise it in its answer. (*See* ECF No. 73, PageID.9137–9139 (citing *Liss v. Lewiston-Richards, Inc.*, 732 N.W.2d 514, 517 n.13 (Mich. 2007)). And Plaintiffs urged the Court to prohibit Champion from raising this defense late in the litigation as it would prejudice them. (*Id.*); *see also Lauderdale v. Wells Fargo Home Mortg.*, 552 F. App'x 566, 573 (6th Cir. 2014) (noting that a district court has discretion to permit a defendant to raise an affirmative defense at summary judgment "if doing so does not result in surprise or prejudice to the plaintiff"). In

particular, Plaintiffs said they would be prejudiced because the MCPA was their only remaining claim and because they had not conducted discovery on this defense.[2] (*Id.*)

A few things have since changed to minimize any prejudice to Plaintiffs. As requested, the Court granted Plaintiffs a limited period of discovery on this defense (at Champion's expense) and Plaintiffs were permitted to reinstate certain claims they had voluntarily dismissed. (*See* ECF Nos. 98, 101.) So the Court will permit Champion to raise this defense now. And even if the Court were not so inclined, Champion filed an amended answer explicitly raising this defense. (ECF No. 102, PageID.12975); *see also B & H Med., L.L.C. v. ABP Admin., Inc.*, 526 F.3d 257, 264 n.8 (6th Cir. 2008); 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1476 (3d ed. 2022) ("Once an amended pleading is interposed, the original pleading no longer performs any function in the case and any subsequent motion made by an opposing party should be directed at the amended pleading.").

With that decided, the Court will next consider whether the distribution of dog food is exempt from the MCPA. The MCPA prohibits a number of "[u]nfair, unconscionable, or deceptive" practices in trade or commerce. *See* Mich. Comp. Laws

---

[2] Plaintiffs did not argue that raising this affirmative defense would surprise them. (*See* ECF No. 73, PageID.9137–9139.) As Champion pointed out, "Plaintiffs cannot plausibly argue they were surprised because they cited Michigan's Feed Law in the Second Amended Complaint and stated that it covers the manufacture and distribution of dog food." (*See* ECF No. 88, PageID.12492 (citing ECF No. 25, PageID.294.) Notably, Plaintiffs' amended complaint cited the particular provision of the Feed Law prohibiting the "false and misleading" labeling of commercial feed, which is discussed in detail below. (ECF No. 25, PageID.294 (citing Mich. Comp. Laws § 287.529).)

§ 445.903. But by its own terms, the MCPA does not apply to a "transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." *See* Mich. Comp. Laws § 445.904. Or, to oversimplify a bit, the MCPA yields to the regulatory authority of other laws and agencies in some circumstances. *See, e.g.*, *Wong v. T-Mobile USA, Inc.*, No. 05-73922, 2006 WL 2042512, at *7 (E.D. Mich. July 20, 2006). Champion has the burden of proving that its conduct is exempt from the MCPA. *See* Mich. Comp. Laws § 445.904(4).

As Plaintiffs acknowledge, the "Michigan Supreme Court has given the MCPA exemption a broad reading[.]" (ECF No. 116, PageID.21228 (internal quotation omitted).) To determine whether the MCPA exemption applies, "the relevant inquiry 'is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited.'" *Liss v. Lewiston–Richards, Inc.*, 732 N.W.2d 514, 518 (Mich. 2007) (quoting *Smith v. Globe Life Ins. Co.*, 597 N.W.2d 28, 38 (Mich. 1999)). Conduct is "specifically authorized" when the general transaction is "explicitly sanctioned" by law. *Liss*, 732 N.W.2d at 520 (holding that a licensed home builder was exempt from the MCPA in a suit about poor workmanship because the "general transaction" of building residential homes is "specifically authorized" by Michigan state law and overseen by a state board). Statutory definitions can be "helpful in determining whether a general transaction or conduct is 'specifically authorized' by law." *Cyr v. Ford Motor Co.*, No. 345751, 2019 WL 7206100, at *2 (Mich. Ct. App. Dec. 26, 2019) (citing *Liss*, 732 N.W.2d at 520).

7

Champion says it is not subject to the MCPA because the "labeling, manufacture, and distribution of dog food in the state of Michigan" is specifically authorized by the Michigan Feed Law and regulated by the Michigan Department of Agriculture and Rural Development (MDARD). (ECF No. 110, PageID.16871 (citing Mich. Comp. Laws § 287.521, *et seq.*).) The Feed Law is an act to "license and regulate the manufacture and distribution of commercial feeds," including feeds "for consumption by dogs or cats." §§ 287, 287.523(gg). It requires distributors of commercial feed to be licensed, § 287.524; sets labeling requirements, § 287.525; prohibits "false or misleading" labeling, § 287.529; and gives the director of MDARD the power to administer the act, to seize commercial feed, and to sue to enjoin violations of the act, §§ 287.522, 287.535–36. For its part, Champion has held a Commercial Feed Manufacturer's/Distributor's license since at least 2013 and "has provided MDARD with copies of its updated or new product labels for as long as Champion has sold pet food in the state of Michigan." (*See* ECF No. 110-2, PageID.16895.)

Champion is, by statutory definition, licensed to "distribut[e] commercial feed within this state." *See* Mich. Comp. Laws § 287.524. Accordingly, their distribution of commercial feed is a transaction or conduct "specifically authorized" by the Feed Law and subject to the oversight of MDARD. So Champion is exempt from the MCPA for conduct related to the distribution of dog food, which explicitly includes dog food labeling. *See* §§ 287.525, 287.529. That conduct is exactly what Plaintiffs challenge here. *See Liss*, 732 N.W.2d at 521; (*see, e.g.*, ECF No. 25, PageID.219 (challenging

8

Champion's "misleading packaging claims and failure to warn injured consumers . . . who reasonably relied upon the misleading packaging claims when purchasing Defendants' premium priced dog food.").) Thus, Champion is exempt from claims under the MCPA in this suit. *See Alexander v. Del Monte Corp.*, No. 09-12303, 2011 WL 87286, at *3 (E.D. Mich. Jan. 11, 2011) (concluding that the sale of food in a grocery store was specifically authorized by the Michigan Food Law of 2000, thus exempting Kroger from the MCPA in a suit related to the sale of fruit).

Plaintiffs protest on a few grounds, but none persuade. First, they argue that "the Packaging Claims and Omissions are not general transactions specifically authorized by the [Feed Law] and are thereby not subject to exemption." (ECF No. 116, PageID.21229.) In other words, Plaintiffs seek to distinguish between "manufacturing and distribution activities" (which they concede are regulated by the Feed Law) and "marketing activities" (which they argue are not regulated by the Feed Law). (*Id.* at PageID.21230.)

Plaintiffs misunderstand the scope of the MCPA's general-transaction exemption. The Michigan Supreme Court has repeatedly explained that "the relevant inquiry is not whether the specific misconduct alleged by the plaintiffs is 'specifically authorized.' Rather, it is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." *Smith*, 597 N.W.2d at 38; *see also Liss*, 732 N.W.2d at 519. As explained above, the general transaction that Plaintiffs challenge is Champion's labeling and distribution of dog food to Michigan consumers. *See* § 287. So Plaintiffs' argument that the Feed Law

9

must also authorize the "specific misconduct" related to Champion's labeling claims and omissions is precisely what the Michigan Supreme Court forbids. *See Liss*, 732 N.W.2d at 521.

One case cited by Plaintiffs clarifies the distinction between a general transaction and specific misconduct. *See Wong v. T-Mobile USA, Inc.*, No. 05-73922, 2006 WL 2042512, at *7 (E.D. Mich. July 20, 2006). In *Wong*, the court explained that "[e]ven if a defendant is licensed or regulated, it may remain liable under the MCPA for conduct outside the scope of its license or the pertinent regulations." *Id.* at *7. Accordingly, the court found that, while defendant T-Mobile was regulated as a cellular provider by the Federal Communications Act and the Federal Communications Commission, the "general transaction" of billing its customers was not regulated by those entities. *Id.* at *8–9. So T-Mobile was subject to suit under the MCPA for double-billing. But here, Plaintiffs seek to hold Champion liable for conduct *within* the scope of its license and pertinent regulations. As explained, the Michigan Feed Law and MDARD regulate the distribution of commercial feeds, including their labeling. So unlike *Wong*, Plaintiffs challenge an aspect of Champion's business that is specifically overseen by MDARD pursuant to the Feed Law. Accordingly, Champion is exempt from the MCPA in this suit.

Second, and relatedly, Plaintiffs argue that Champion "has alleged no evidence that the [Feed Law or MDARD] specifically authorize[d] its Packaging Claims and Omissions" or that any labels at issue here were "actually submitted" to or "approved" by MDARD. (ECF No. 116, PageID.21233–21235.) But this argument seeks to hold

10

Champion to an even higher standard than the one this Court just rejected. Champion does not need to show that MDARD "approved" these specific labels. It only needs to show that the general transaction at issue here is authorized and regulated by the Feed Law and overseen by MDARD, which it has done.

Finally, Plaintiffs argue that the Feed Law is "concerned with ingredients and guaranteed analysis" (similar to the nutrition facts found on human food labels) and not with "marketing claims." (ECF No. 116, PageID.21232–21233.) That is not an accurate statement of law. First, the Feed Law defines "labeling" as "all labels and other written, printed, electronic, or graphic matter, and *includes advertising*." § 287.523(w). Plaintiffs do not mention this provision or attempt to parse the distinction between marketing and advertising. Moreover, the Feed Law says: "A commercial feed is considered to be misbranded and in violation of this act if any of the following occur: (a) Its labeling is false or misleading in any particular. . . . (c) It is not labeled as required under section 5." § 287.529. Section 5 details the labeling requirements related to ingredients and guaranteed analysis. *See* § 287.525. So the Feed Law is "concerned with" both false and misleading labeling and with labeling related to a commercial feed's ingredients and guaranteed analysis.

In conclusion, because Champion "is licensed to perform the general transaction or conduct [of distributing commercial feed in Michigan] and is subject to oversight by a regulatory board or officer acting under statutory authority [namely, MDARD], it necessarily follows that the subject transaction or conduct falls under the [MCPA] exemption[.]" *See Cyr*, 2019 WL 7206100, at *2. And though the MCPA

11

does not apply to the labeling and distribution of commercial feed, the Feed Law itself does provide various remedies and penalties. *See* Mich. Comp. Laws § 287.536.

### B. Breach of Express and Implied Warranties

Champion next argues that the express and implied warranty claims fail as a matter of law because Plaintiffs failed to provide the required pre-suit notice. (ECF No. 110, PageID.16876.) Plaintiffs argue that Champion received pre-suit notice in "a written CLRA [California Consumers Legal Remedy Act] notice dated March 7, 2018" on behalf of the named plaintiffs in *Reitman v. Champion Petfoods USA, Inc. (See* ECF No. 116, PageID.21237; ECF 116-91); *see also Reitman*, No. 18-1736 (C.D. Cal. filed Mar. 1, 2018) (voluntarily dismissed with prejudice in Jan. 2021). And, say Plaintiffs, "after that notice was given, on April 19, 2018," Ramy Shaker, a named plaintiff in this case, was added as a named plaintiff in *Reitman*. (ECF No. 116, PageID.21236.)

Michigan's Uniform Commercial Code requires that "[w]here a tender has been accepted . . . the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy[.]" Mich. Comp. Laws § 440.2607(3)(a). In other words, "upon discovering a breach, the buyer must provide reasonable pre-suit notice to even a remote manufacturer lest the buyer be barred from any remedy." *Johnston v. PhD Fitness, LLC*, No. 16-CV-14152, 2018 WL 646683, at *3 (E.D. Mich. Jan. 31, 2018) (citing *Gorman v. Am. Honda Motor Co.*, 839 N.W.2d 223, 230 (Mich. Ct. App. 2013)). The purposes of the UCC's notice requirement are "(1) to prevent surprise and allow the

12

seller the opportunity to make recommendations [on] how to cure the nonconformance, (2) to allow the seller the fair opportunity to investigate and prepare for litigation, (3) to open the way for settlement of claims through negotiation, and (4) to protect the seller from stale claims and provide certainty in contractual arrangements." *Am. Bumper & Mfg. Co. v. Transtechnology Corp.*, 652 N.W.2d 252, 256 (Mich. Ct. App. 2002).

Champion did not receive reasonable pre-suit notice under Michigan law when plaintiffs in an unrelated suit sent Champion a letter demanding that they rectify violations of a different state's law. (*See* ECF No. 116-91, PageID.22190.) Plaintiffs have provided no authority to suggest that a letter that does not reference any Michigan plaintiffs or Michigan law can amount to "reasonable notice" of a potential breach of warranty claim in Michigan. *See Gorman*, 839 N.W.2d at 229. And this Court does not find such notice reasonable. To hold otherwise would thwart the purposes of the Michigan UCC by injecting considerable surprise and uncertainty into contractual relationships. Such a finding would require sellers to anticipate suits from unrelated parties under unrelated laws each time it received any notice of a potential breach. *See Am. Bumper & Mfg. Co.*, 652 N.W.2d at 256. So the Court simply cannot agree with Plaintiffs that "the notice was mailed *one* month prior to Plaintiff Shaker bringing any claims in any case," when neither Shaker nor Michigan's UCC were mentioned in the letter. (*See* ECF No. 116, PageID.21237.)

And adding Shaker to the *Reitman* action cannot provide reasonable *pre-suit* notice to Champion either. As this Court has previously held, "filing suit does not

13

amount to 'reasonable' notice.'" *Johnston*, 2018 WL 646683, at *3 (citing *Rosipko v. FCA US, LLC*, No. 15-11030, 2015 WL 8007649, at *5 (E.D. Mich. Dec. 7, 2015)).

In a final effort to avoid this conclusion, Plaintiffs cite cases applying other states' less stringent pre-suit notice requirements to suggest that they met their burden here. (*See* ECF No. 116, PageID.21237 (citing *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975, 1013 (E.D. Mich. 2017); *City of Wyoming v. Procter & Gamble Co.*, 210 F. Supp. 3d 1137, 1158 (D. Minn. 2016)).) But the portion of *In re FCA US* discussing pre-suit notice explained that "under the *laws of most of the states* mentioned in the express warranty claims . . . [the] required 'notice' [may] be given by the filing of a civil complaint[.]" *See* 280 F. Supp. 3d at 1013. But Michigan is not such a state. Similarly, *City of Wyoming* applied a less demanding test under Minnesota law that has been expressly rejected by Michigan courts. *Compare* 210 F. Supp. 3d at 1158 ("An attempt at notice is sufficient as long as it 'let[s] the seller know that the transaction is still troublesome and must be watched.'"), *with Gorman*, 839 N.W.2d at 231 (rejecting the "troublesome" test as "misplaced").

Plaintiffs failed to provide the required notice under Michigan law to enforce their implied or express warranties. So they are "barred from any remedy[.]" *See* Mich. Comp. Laws § 440.2607(3)(a).

One final note. Plaintiffs' express warranty claims fail for another reason: Plaintiffs lack privity of contract with Champion because they purchased their dog food from local pet stores. *See Montgomery v. Kraft Foods Global, Inc.*, 822 F.3d 304, 309 (6th Cir. 2016) (citing *Heritage Res., Inc. v. Caterpillar Fin. Servs. Corp.*, 774

N.W.2d 332, 343 n.12 (Mich. Ct. App. 2009) ("[P]rivity of contract *is* necessary for a remote purchaser to enforce a manufacturer's express warranty.")). And Plaintiffs' argument that they have privity with Champion by virtue of being intended beneficiaries of its contracts with third-party retailers also fails. They neither identified the specific contracts that allegedly made them beneficiaries nor provided evidence to suggest that the parties to such a contract intended to benefit them. *See Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 608 (E.D. Mich. 2017) ("Plaintiffs do not plead facts to identify the specific contract to which they claim privity. And Plaintiffs' allegations fail to show that Whirlpool and the retailers intended in entering their contract to directly benefit Plaintiffs[.] . . . Moreover, Plaintiffs muster no authority to support the proposition that an end-user consumer is an intended beneficiary to a contract between a remote manufacturer and a retailer." (internal quotations omitted)).

So the Court dismisses Plaintiffs' breach of express and implied warranties claims for lack of pre-suit notice, and the breach-of-express-warranties claim is additionally dismissed for lack of privity.

### C. Fraudulent Misrepresentation and Concealment

Finally, Champion argues that Plaintiffs' fraudulent-misrepresentation and fraudulent-concealment claims are barred by the economic-loss doctrine. (ECF No. 110, PageID.16879–16881.) Plaintiffs argue that the doctrine does not apply (1) when a product is "adulterated with toxins;" (2) when the parties did not negotiate a

15

contract; and (3) when fraud "pervades the transaction." (ECF No. 116, PageID.21238–21240.) Champion has the better of the arguments.

The economic-loss doctrine "provides that where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only economic losses." *Neibarger v. Universal Cooperatives, Inc.*, 486 N.W.2d 612, 615 (Mich. 1992) (internal quotations omitted). As the Michigan Supreme Court explained, the doctrine hinges on the distinction between a consumer's economic expectations, which are protected by contract law, and a consumer's interest in not being injured by a defective product, which is protected by tort law. *Id.*; *see also Crossing at Eagle Pond Apartments, LLC v. Lubrizol Corp.*, 790 F. App'x 775, 777 (6th Cir. 2019). In other words, the economic-loss rule recognizes that "tort law is a superfluous and inapt tool for resolving purely commercial disputes." *Id.* (quoting *Miller v. United States Steel Corp.*, 902 F.2d 573, 574 (7th Cir. 1990) (Posner, J.)).

For starters, Plaintiffs' claim for damages is purely economic. The complaint articulates the harm they suffered in these terms: "[a]s the result of Defendants' wrongful conduct, as alleged herein, Defendants injured Plaintiffs when Plaintiffs were misled to pay premium prices for Defendants' misleadingly-packaged dog food, because the dog food did not deliver what was promised." (ECF No. 25, PageID.222.) Because their "expectations in a sale [were] frustrated[,]" their "remedy is . . . in contract alone." *See Neibarger*, 486 N.W.2d at 615.

Plaintiffs' arguments to the contrary are not persuasive. As to the first argument, despite the assertion that Champion's food was "adulterated with toxins," nowhere do Plaintiffs claim that their dogs became sick from the dog food or were otherwise injured by the dog food. Indeed, Plaintiffs "agree[d] with [Champion] . . . that safety is not at issue in the present matter." (*See, e.g.*, ECF No. 70, PageID.8749.) And for that reason, Plaintiffs' citation to two asbestos cases that declined to apply the economic-loss rule are irrelevant. The main case relied upon, *Detroit Board of Education v. Celotex Corp.*, specifically held that "asbestos cases are unique in the law." 493 N.W.2d 513, 518 (Mich. Ct. App. 1992). The other, *Roseville Plaza Ltd. Partnership v. U.S. Gypsum Co.*, agreed and further concluded that asbestos remediation is a non-economic damage that was not "caused by the failure of the [product] to perform as expected" as is typical in economic-loss cases. *See* 811 F. Supp. 1200, 1205 (E.D. Mich. 1992). Because no dogs—let alone humans—were injured by any alleged toxins in the dog food, this is simply not a route to avoid the economic-loss doctrine.

Plaintiffs next argue that the economic-loss doctrine should not apply because they did not negotiate with Champion and so could not have negotiated the allocation of risk as to the quality of the dog food. (ECF No. 116, PageID.21239.) But, as the Sixth Circuit explained, a "long line of Michigan cases has applied the economic-loss doctrine to bar a . . . plaintiff's tort suit against a product manufacturer even though the plaintiff did not directly contract with the manufacturer." *Crossing at Eagle Pond Apartments*, 790 F. App'x at 778–79 (collecting cases). This is true even where the

17

plaintiff is a consumer rather than another commercial entity. *See Davis v. Forest River, Inc.*, 774 N.W.2d 327, 328 (Mich. 2009) (applying economic-loss doctrine to consumer's purchase of a recreational vehicle). So this argument fails too.

And finally, the Court is not convinced that fraud "pervaded the transaction" such that the economic-loss doctrine should not apply. True, fraud in the inducement is an "exception to the [economic-loss] doctrine." *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 532 N.W.2d 541, 543 (Mich. Ct. App. 1995). But that exception only applies when the alleged fraud is unrelated to the "quality and character of the goods sold." *See id.* at 545; *see also Irwin Seating Co. v. Int'l Bus. Machines Corp.*, 306 F. App'x 239, 243 (6th Cir. 2009). Here, the alleged fraud is directly related to the quality and character of the dog food Champion sold, so this exception does not apply.

In sum, Plaintiffs' fraudulent-misrepresentation and fraudulent-concealment claims are barred by the economic-loss doctrine. *See Theuerkauf v. United Vaccines Div. of Harlan Sprague Dawley, Inc.*, 821 F. Supp. 1238, 1241 (W.D. Mich. 1993) ("[T]he Economic Loss Doctrine prohibits plaintiff from maintaining his tort claims because the dispute here is in essence a contractual dispute in which the damage arose out of the commercial sale of goods."); *see also Cesare v. Champion Petfoods USA Inc.*, 429 F. Supp. 3d 55, 65 (W.D. Pa. 2019) (dismissing fraud claim as "barred by the economic loss doctrine").

## IV. Conclusion

For the foregoing reasons, Champion's revised motion for summary judgment is GRANTED. (ECF No. 110.) Accordingly, all other pending motions are DENIED as moot. (ECF Nos. 104–109.) A separate judgment will follow.

SO ORDERED.

Dated: September 1, 2022

                                                s/Laurie J. Michelson
                                                LAURIE J. MICHELSON
                                                UNITED STATES DISTRICT JUDGE